The **KRAMERTOWN COMPANY, INC.,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVE-
NUE, Respondent-Appellee.**

No. 73–2809

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1974.

---

\* Rule 18, 5th Cir.;  see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., et al., 5th Cir. 1970, 431 F.2d 409, Part I.

nected to permanent ducts which lead through the roof surface into the store they service. These same ducts distribute treated air throughout the inside of the store.

Section 38(a) of the Internal Revenue Code of 1954 provides for a credit against income tax for investment in certain depreciable property. Section 48 of the Code defines "Section 38 property" as tangible property but "not including a building and its structural components." Since these heating and air conditioning units are clearly tangible property, the issue presented by this appeal turns upon whether the units are structural components of a building for purposes of Section 48.

Charles Delbert Hosemann, Jr., Charles L. Brocato, Jackson, Miss., for petitioner-appellant.

Scott P. Crampton, Meyer Rothwacks, Asst. Attys. Gen., Tax Div., U. S. Dept. of Justice, Leonard J. Henzke, Jr., Lawrence B. Gibbs, Acting Chief Counsel, I. R. S., Alfred S. Lombardi, Tax Div., Dept. of Justice, Washington D. C., for respondent-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The Kramertown Company (taxpayer) appeals from the tax court's holding that the cost of certain rooftop air conditioning and heating units was not eligible for the investment credit.[1] We affirm.

The facts relevant to this appeal were mainly stipulated and are in part as follows. Taxpayer is the owner of a seven store shopping center. It provides rooftop heating and air conditioning units to six of the center's store tenants pursuant to negotiated leases.[2] The eleven units provided for these six stores cost the taxpayer 69,021.71 dollars. These dual energy units are supplied with natural gas and electric energy from the interior of the stores. The gas lines run through an exterior cutoff valve before reaching the point of connection to the units which is a pipe coupling. The electric lines run through an exterior weather-proof disconnect switch box before the ultimate point of connection to the units. The units themselves rest upon wood runners or steel beams laid upon the finished surface of the roof and are not directly attached to the building. However, the units are con-

■ Treas.Reg. 1.48–1(e)(2) provides: "[t]he term 'structural components' includes such parts of buildings as walls, partitions, floors and ceilings, as well as any permanent coverings therefor, such as paneling or tiling; windows and doors, *all components (whether in, on, or adjacent to the building) of a central air conditioning or heating system, including motors, compressors, pipes and ducts.*" The tax court held each of the rooftop units in the instant case to be a component of the storewide central air conditioning system of which it is a part within Treas.Reg. 1.48–1(e)(2). Although it is based on facts that were mainly stipulated, this ultimate factual conclusion is binding if it is a permissible inference even though this court might have reached a contrary result had it been the trier of fact. Moreover, our independent review of the facts leaves us without the slightest doubt that these combination air conditioning and heating units, are as much parts of a central system for each store as such units would be if they had been built into the roof or walls or otherwise more permanently integrated with the other internal components.

1. See 26 U.S.C. § 38.

2. One tenant, A & P Food Stores, Inc., furnishes its own heating and air conditioning units under its lease with taxpayer.

The taxpayer argues that the effect of Treas.Reg. 1.48–1(e)(2) and the interpretive revenue rulings is contrary to the intent of Congress in two respects: (1) they fail to adequately distinguish between individual air conditioning units and a central air conditioning system as required by the legislative history of Section 38; (2) they fail to accord enough significance to state fixtures law and employ a test contrary to the Eighth Circuit's decision in Minot Federal Savings and Loan v. United States, 435 F.2d 1368 (1970).

The technical explanation of the Revenue Act of 1962 contained in the Senate Report states:

> Assets accessory to the operation of a business such as . . . *individual air conditioning* units . . . generally constitute tangible personal property for purposes of Section 38, even though such assets may be termed fixtures under local law.

> The terms "structural components" of a building includes such parts of the building as central air conditioning and heating systems, . . .[3]

The House Ways and Means Committee Report also contains an express distinction between individual units and components of a central air conditioning system.[4] While the Treasury Regulation speaks only in terms of a central air conditioning system and does not also refer to individual air conditioning units as did the legislative reports, taxpayer ascribes entirely too much to the form used to set out the regulation.

■ Section 38(b) provides: "[t]he Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section and subpart B." The reason for this statutory grant of power in Section 38 is obvious. Congress deemed it more appropriate to rely upon the administrative flexibility of the Treasury Department for those nice distinctions which must be drawn as to eligibility of various types of property for the investment credit. Regulations issued pursuant to the express statutory authorization in Section 38(b) are legislative in character and as binding upon a court as a statute if they are (a) within the granted power (b) issued pursuant to proper procedure and (c) reasonable. K. Davis, Administrative Law, Section 5.03 at 299.

■ Since the taxpayer does not allege procedural deficiencies in the issuance of these regulations, it must show that they are without the power granted by Section 38 or that they are unreasonable. It is true that the regulation does define structural components only in terms of *including* components of a central air conditioning system, rather than taking the dual approach of also setting out specifically that structural components *excluded* individual air conditioning units. However, the mere utilization of this form of expression furnishes too slight a basis to infer that the Secretary intended thereby to expand the term central air conditioning system to encompass individual air conditioning units as well in contravention of the legislative history of Section 48. The accuracy of this interpretation is confirmed by observing that one year after the enactment of the investment credit, when Congress considered changes in its provisions, the history of that consideration shows it expressly approved the Commissioner's proposed regulations as consistent with Congressional intent in enacting the investment credit. "The proposed regulations issued by the Treasury Department with respect to the term 'structural components' provide an extensive list of the type of items considered to be structural components and therefore not eligible for the investment credit . . . these regulations are an accurate interpretation of the intention of Congress last year in this respect." H.R.Rep.No.749, 88 Cong., 1st Sess., page 41 (1964–1 Cum.Bull. 123, 159). The Senate Finance Committee Report includes the same statement. S.

---

3. S.Rpt. 1881, 87th Cong., 2d Sess., 1962–3 Cum.Bull. 858.

4. H.Rpt. 1447, 87th Cong., 2d Sess., 1962–3 Cum.Bull. 415.

Rep.No.830, 88 Cong., 2d Sess., (1964–1 Cum.Bull. 505, 545).

■ The taxpayer's second contention asserts that under Mississippi law these combination units are considered personal property and that this determination should be given some weight. Taxpayer gleans from the Committee Report an intention to permit the term tangible personal property to be given a broader meaning than that term is given under state law, but without in any sense permitting it to have a more restrictive meaning.[5] We think a more reasonable reading of the cited Committee Report language is that state law is irrelevant. *See* Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed.2d 1232 (1953). Additionally, taxpayer's argument taken to its logical conclusion would result in creating investment credit rights which would vary from state to state. For instance, if State X defined detachable components of a central air conditioning system to be personal property and the law of State Y considered such components to be real property, an investment credit for like property would be allowable in State X but not in State Y.

Finally, the taxpayer argues that to hold these units to be structural components of a building is necessarily inconsistent with Minot Federal Savings and Loan Association v. United States, 435 F.2d 1368 (8th Cir. 1970). In *Minot* the Commissioner argued that movable partitions used as room dividers in a building owned by the taxpayer-lessor served the function of walls and were thus structural components of the leased building not eligible for the investment credit. This argument was rejected by the court as contrary to the legislative history of Section 48, the intent of the investment credit, and to the Treasury Department's regulations. The court held that since these dividers were not *permanent* in nature and could be easily detached and moved, they were tangible personal property, eligible for the investment credit.

■ The taxpayer asserts that these rooftop air conditioning units similarly cannot pass a permanency test because they too can be detached. Taxpayer concedes that the air ducts and the gas and electric lines which make the units functional are structural components. However, it argues that since the units themselves are designed and installed so that they can be removed from the building for service or replacement and since no unit services more than one store tenant, they are "individual" units. We disagree. The motors and compressors of most central air conditioning units are capable of being removed and replaced by relatively simple mechanical methods. Thus, the quality of removability is not the sole determinant of whether a piece of machinery is a structural component. The weight, location and capacity of these storewide rooftop units are all indications of the reasonableness of classifying these machines of structural components of the buildings they serve under either a functional test or a permanency test. The decision of the tax court [6] is

Affirmed.

---

5. The Senate Report provides:
   Tangible personal property is not intended to be defined narrowly here, nor to necessarily follow the rules of State law. It is intended that assets accessory to a business such as grocery store counters, printing presses, individual air conditioning units, etc., even though fixtures under local law, are to qualify for the credit. S.Rpt. 1881, 87th Cong., 2d Sess., 1962–3 Cum. Bull. 722.

6. Our disposition of the instant case is fully supported by another Tax Court case on indistinguishable facts. Fort Walton Square, Inc. v. Commissioner, 54 T.C. 653 (1970).